UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shenzhen Liqiu Sanhou Technology Co., Ltd<br><br>            Plaintiff,<br><br>v.<br><br>Xiaoling Che,<br><br>            Defendant. | **CASE NO.** 24-cv-11980<br><br>**Judge Andrea R. Wood**<br><br>**Magistrate Judge Heather K. McShain** |

## DECLARATION OF RUOTING MEN

I, Ruoting Men, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of New York and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff Shenzhen Liqiu Sanhou Technology Co., Ltd ("Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and if called as a witness, I could and would competently testify as follows:

2. I have now appeared in more than 100 cases in different United States District Court. A significant majority of these cases, approximately 80%, involve online sellers on Amazon. As a result, I have extensive experience dealing with Amazon Sellers and Amazon.com.

3. Based on my experience in combating online unfair competition, I have observed individuals such as the Defendant using intellectual property (IP) as a tool to harm sellers on Amazon. Specifically, malicious competitors like the Defendant may use web crawlers to collect information about the best-selling products on Amazon, and then spend large sums of money to

register trademarks, design patents, or copyrights using those products as their application material. This practice can be used as a means of unfairly targeting and disrupting the business of competitors on Amazon, and is a growing concern in the online marketplace

4. The practice of registering numerous trademarks, design patents, or copyrights using questionable application materials can lead to various issues, including the use of fake specimens, trademark squatting, and the registration of non-registrable copyright materials, such as useful articles. These practices have not gone unnoticed, and federal agencies such as the USPTO have launched investigations into these types of massive registrations.

5. In a 2021 news release, USPTO published an article stating, "Sanctions issued to terminate invalidly filed submissions." In that publication, USPTO sanctioned a Chinese Company and its Executive Director for violating USPTO rules of practice.[1] The Chinese Company filed more than 15,000 trademark applications that were deemed fraudulent.[2]

6. The above news release is a direct and clear example of the volume and scope of these malicious competitors such as Defendant.

7. In my experience, once malicious competitors like the Defendant have obtained their trademark, copyright, or patent certificates, they tend to lurk in the shadows and strike at their target when it will cause the most harm. This often occurs during busy holiday seasons, such as Thanksgiving, Christmas, or New Year's, when sellers are particularly vulnerable. Just like what happened in this case.

8. For example, in the Plaintiff's case, its ASINs were taken down in early November, just before Thanksgiving. Thanksgiving and the following Christmas are the most

---

[1] https://www.uspto.gov/subscription-center/2021/sanctions-issued-terminate-invalidly-filed-submissions
[2] https://www.ipintelligencereport.com/2021/12/22/uspto-sanctions-chinese-law-firm-for-fraud-and-terminates-more-than-15000-us-trademark-applications/

important sales periods of the year for sellers. To meet the demands of this peak season, Plaintiff typically invests in advertising, orders new products from manufacturers, and ships products to its U.S. warehouses. The takedown of Plaintiff's ASINs has severely impeded its ability to prepare for this crucial sales period, causing significant financial harm and damaging its reputation among customers.

9. After taking down the ASINs, the malicious competitor may simply ignore the seller's requests for resolution and quickly take over the seller's previous market share. The damage to the seller can be irreparable, as the process of restoring the seller's ASINs and reputation can be lengthy and costly. It is therefore crucial to address these issues promptly and effectively to prevent further harm.

10. Plaintiff is one of the top sellers on Amazon, and one of Defendant's biggest competitor. However, as a result of Defendant's fraudulent complaint, Amazon has taken down Plaintiff's ASINs, causing the Plaintiff to experience zero daily sales. This has effectively shut down a significant portion of Plaintiff's Amazon store. Even if Plaintiff's ASINs are reinstated tomorrow, it will take considerable time for Plaintiff to regain their previous sales volume.

11. Based on my professional experience, I believe that Defendant is a malicious competitor who is using fraudulent copyright infringement complaints as a tool to harm Plaintiff's business and gain an unfair advantage in the market.

12. **The reason notice should not be given to Defendant is due to 1)Amazon's automatic Store Deactivation System, and 2) Plaintiff's harm is irreparable and may not withstand Defendant's delay tactic.**

13. When an Amazon store receives an excessive number of complaint within a short period, the Account Health Rating (AHR) score of the store drops significantly, triggering an automatic deactivation reaction from Amazon..

14. For example, in Case No. 2022-cv-07734, which was litigated in the Eastern District of New York, Shenzhen Miracle Laptop Bags Co., Ltd sued a defendant for submitting fraudulent trademark complaints to Amazon, which caused the delisting of plaintiff's ASINs. After being notified of the lawsuit, the defendant filed an additional 11 trademark complaints against plaintiff's store within two hours. Although the defendant ultimately retracted all 11 complaints due to court pressure, on January 18, 2023, plaintiff's three stores received notices from Amazon stating that they would be shut down within 72 hours due to multiple intellectual property complaints filed against them.

15. In a similar case within this district (2023-cv-00268), Dongguan Yuhong Shenxuan Tech Co., Ltd sued an unnamed John Doe Defendant for submitting fraudulent copyright complaints to Amazon, resulting in the delisting of four of the Plaintiff's ASINs. Upon receiving notice of the lawsuit, the Defendant promptly threatened to take action and prevent the Plaintiff from selling their product during peak season. Fortunately for the Plaintiff, it was granted a TRO by Honorable Valderrama, which prevented the Defendant's attack from achieving its intended purpose.

16. Based on my experience, I strongly believe that Plaintiff is at risk of suffering the same tragedy as in case 22-cv-07734. Typically, when a malicious competitor like Defendant receives notice of a lawsuit, they may stop communicating via email and instead file a deluge of patent infringement complaints against not only Plaintiff's store but also other stores selling similar products. This tactic of filing multiple complaints is likely to trigger Amazon's

deactivation procedure, resulting in a significant drop in Plaintiff's store's "Account Health Rating" score. Ultimately, Plaintiff's store, along with those of other similar sellers, may be shut down permanently with no chance of reopening.

17. Plaintiff's business will also be irreparably harmed.

18. Also, as stated in Ms. Huang's declaration, Plaintiff's market share on Amazon, which previously stood at 15~20%, has dropped to zero. Plaintiff's product, which was ranked No. 3 before being delisted, is no longer available for purchase, leading to substantial revenue and brand reputation loss. In preparation for the holiday sales peak, Plaintiff prepared 14,000 units of inventory(worth about 250,000), all of which are now at risk of being destroyed by Amazon.

19. Plaintiff simply does not have the time to endure a 21-day or longer briefing schedule, especially as Defendant is likely to use the holiday season and other excuses to delay the schedule. And Plaintiff is willing to pay a bond to the Court in exchange for reinstating the links.

20. An order from "an Article III Judge" will put Amazon on notice to stop the automatic Deactivation procedure. Plaintiff will in due course notify Defendant about the current lawsuit once a Temporary Restraining Order is issued by this honorable Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this November 25, 2024.

/s/ Ruoting Men
Ruoting Men
***Counsel for Plaintiff***